IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY S. WILLIAMS, | : | Civil No. 3:19-cv-1261 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| PA DEPARTMENT OF CORRECTIONS, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Anthony Williams ("Williams), an inmate confined at the State Correctional Institution, Coal Township, Pennsylvania, ("SCI-Coal Township"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Unit Manager Kathy Biscoe and Correctional Officers Novallis and Wydra. Presently ripe for disposition is Defendants' motion (Doc. 16) for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court will grant the motion.

I. **Statement of Undisputed Facts**[1]

On December 29, 2018, Williams was on janitorial work detail at SCI-Coal Township. (Doc. 19, Statement of Material Facts, ¶¶ 1-2; Doc. 23, Counterstatement of Material Facts, ¶¶ 1-2). Janitorial work detail involves sanitizing, sweeping, mopping, and cleaning. (Id. at ¶ 3). As part of his janitorial duties, Williams was required to shake out cell rugs to clean any debris off of them, an act known as "rug popping." (Id. at ¶ 4). Williams asserts that he was shaking out a rug when debris from the rug flew into his face, arms, and hands, causing eye irritation, a rash, nausea, a stomachache, and vomiting. (Doc. 19-1, Doc. 23, pp. 4-35, Deposition of Anthony Williams ("Williams Dep."), at 13:3-4; 13:22-24; 14:1-3; 16:14-16). Williams contends that he immediately asked Defendant Wydra for medical attention, but Wydra refused to send him to the medial department. (Doc. 23 ¶ 5). Williams was treated by medical staff approximately two to three days later. (Doc. 19 ¶ 5; Doc. 23 ¶¶ 5, 6). Williams states that he received treatment for his eye from December 31, 2018 to January 26, 2019. (Doc. 23 ¶ 6). Defendants maintain that Williams has no lasting injuries from this event. (Doc. 19 ¶ 6).

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (Docs. 19, 23).

Williams never spoke directly to Defendant Biscoe, the Unit Manager, regarding "rug popping" duties. (Doc. 19 ¶ 7). Williams asserts that he told Defendant Novallis that he was uncomfortable shaking out rugs without personal protective equipment. (Doc. 23 ¶ 7). Defendant Novallis allegedly informed Williams that he spoke to Defendant Biscoe about getting personal protective equipment and that "she was on top of it." (*Id.*).

II.  **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III. Discussion

### A. Lack of Personal Involvement of Defendant Biscoe

Defendant Biscoe argues that Williams fails to state a claim against her because she lacks personal involvement in the alleged wrongs. (Doc. 20, pp. 4-6). Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

Williams states that Defendant Biscoe is a Unit Manager at SCI-Coal Township and "is in charge of the supervision and discipline of the Unit Management Team of D Unit at SCI-Coal." (Doc. 1 ¶ 8). The only claim against Defendant Biscoe is that Defendant

5

Novallis allegedly informed Biscoe about placing an order for more personal protective equipment. (*Id.* at ¶ 22). Williams concedes that he never spoke to Defendant Biscoe. (Williams Dep. 17:9-14). At his deposition, Williams testified, in response to defense counsel's questions, as follows:

> Q [Attorney]: When did you talk to [Biscoe], if at all?
>
> A [Williams]: Well, I hadn't spoken with her. Defendant Novallis said that he spoke to her and that he informed her that inmates are requesting, me in particular are requesting PPE or safety equipment when popping out rugs.
>
> . . .
>
> Q [Attorney]: You never talked to Biscoe?
>
> A [Williams]: No.
>
> Q: [Attorney]: You just heard what she may or may not have said from the other defendants?
>
> A [Williams]: Correct.
>
> . . .
>
> Q [Attorney]: And [Biscoe] was not present or involved the specific day of this incident?
>
> A [Williams]: She was not present during this incident.

(Williams Dep. 17:9-14; 21:19-23; 23:3-5).

It appears that Williams attempts to hold Defendant Biscoe liable based on her supervisory role of Unit Manager. Any attempt by Williams to hold Defendant Biscoe liable for the actions of her subordinates is essentially an assertion of *respondeat superior* liability

6

which seeks to hold her liable based on her supervisory role. This ground of constitutional liability has been squarely rejected by the courts. *See Rode*, 845 F.2d at 1207. Williams has failed to establish that Defendant Biscoe was personally involved in the alleged violation of his constitutional rights. Accordingly, Defendant Biscoe is entitled to judgment in her favor to the extent that Williams' claims against her rely on a *respondeat superior* theory of liability.

**B.     Eighth Amendment Conditions of Confinement Claim**

Williams asserts that his requirement to work in "unsafe, hazardous conditions" constituted cruel and unusual punishment in violation of his Eighth Amendment rights. (Doc. 1, p. 6). A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). "[C]laims of negligence, . . . without some more culpable state of mind, do not constitute 'deliberate indifference.'"

*Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

As part of his prison job, Williams was required to perform basic janitorial duties such as cleaning showers, disinfecting gym equipment, wiping down surfaces, mopping and sweeping, and shaking out rugs. (Williams Dep. 7:6-24). Williams asserts that he was required him to shake out rugs without appropriate personal protective equipment and he suffered injuries by working without such safety gear. (Williams Dep. 9:17-25; 12:23-13:9).

First, the record does not establish that Williams was exposed to an unreasonably high level of harm by shaking out rugs that posed a substantial risk to his present or future health. There is no evidence that Williams' common janitorial work duties, including shaking out rugs, meets the high standard required to show a violation of the Eighth Amendment.

Second, the record fails to establish that Defendants were aware of and disregarded an *excessive* risk of harm to Williams. The record reflects that Williams informed Defendants Wydra and Novallis that the was "uncomfortable" shaking out rugs without personal protective equipment. (Doc. 23 ¶ 7; Williams Dep. 10:14-19; 11:1-6; 12:11-21). Although Williams expressed his concern about working without personal protective equipment, there is simply no evidence that Defendants were aware of or should have been aware of an excessive risk to Williams' safety. The record establishes that shaking out rugs is "a normal practice" at SCI-Coal Township, it has been occurring since approximately 2017, and the work assignment is well within prison policy. (Williams Dep. 19:5-12; 20:25-

21:1). Williams offered no evidence from which a reasonable jury could infer that the Defendants knew of and disregarded the risk that caused him to suffer injuries.

In sum, Williams has failed to establish that he was exposed to a serious risk to his health or safety, or that any Defendant was aware of and failed to protect him from a serious risk of present or future injury from performing basic janitorial duties of shaking out rugs. The Court will grant Defendants' motion for summary judgment on this ground.

### C.     Eighth Amendment Deliberate Indifference Claim

Williams asserts that Defendant Wydra was deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, for refusing to allow him to see medical immediately after shaking out the rugs.[2] (Doc. 1 ¶¶ 32, 38). The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000). In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse*, 182 F.3d at 197. To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to establish deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the

---

[2] Williams makes no claims regarding the adequacy of his medical treatment once he was treated by the medical department.

defendant: (1) was subjectively deliberately indifferent (2) to the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 834, 837; *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the applicable Eighth Amendment analysis requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge on the part of the defendant if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol*, 256 F.3d at 133 (citing *Farmer*, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.*

Williams asserts that when he was shaking out a rug, debris from the rug flew into his face, arms, and hands. (Williams Dep. 13:3-4). As a result, he suffered eye irritation, a rash, nausea, a stomachache, and vomiting. (Williams Dep. 13:22-24; 14:1-3; 16:14-16). Williams testified that the nausea, stomachache, and vomiting were a "momentary thing" and only occurred right after the incident. (Williams Dep. 16:14-21). With respect to the eye injury and rash, Williams received medical treatment for these ailments. Two days after the incident, a nurse prescribed eye drops to flush-out any particles in Williams' eye and advised him to purchase ointment from the commissary to "solve the rash issues." (Williams Dep. 15:9-16; 16:4-13; Doc. 23, p. 39-40). Williams testified that he used the eye drops on an as-needed basis for three to four months, the drops healed his eye, and after he finished the last bottle of eye drops, he was "fine." (Williams Dep. 15:17-25; 16:1-3: 17:4-6). Williams further asserts that he received treatment for his eye from December 31, 2018 through July 26, 2019, and that he has no permanent injuries from this incident. (Doc. 19 ¶ 6; Doc. 23 ¶ 6; Williams Dep. 21:9-11).

Assuming that Williams has suffered a serious medical condition sufficient for purposes of a deliberate indifference claim, the summary judgment record lacks any evidence tending to show that Defendant Wydra was deliberately indifferent to his serious medical needs. On the day of the incident, December 29, 2018, Williams informed Defendant Wydra that "something flew into [his] eyes and [his] face" and he requested

medical attention for his eye irritation.[3] (Williams Dep. 14:11-12). The record fails to establish that Defendant Wydra had actual knowledge or reason to believe that any debris in Williams' eye constituted an excessive risk to his health or safety. The delay attributable to Defendant Wydra's alleged failure to secure immediate treatment for Williams was two days. Williams sustained injuries on December 29, 2018 and was treated by the medical department on December 31, 2018. (Doc. 23 ¶¶ 2, 6; Doc. 23, pp. 46-47). Williams has failed to establish that his need for more immediate medical attention was so obvious that the delay he experienced constituted deliberate indifference. Furthermore, the record demonstrates that the two-day delay in receiving medical treatment did not result in any permanent, lasting injuries to Williams. *See, e.g.*, *Ayala v. Terhune*, 195 F. App'x 87, 91 (3d Cir. 2006) (holding that there was no deliberate indifference when a prisoner suffered sporadic delays of up to four days in receiving prescription medicine).

    The Court finds that Defendant Wydra, a correctional officer, lacked the requisite knowledge to realize the potential for a serious eye injury which required urgent medical attention, and thus could not have been deliberately indifferent. Williams has failed to establish an Eighth Amendment medical claim against Wydra and Defendants' motion for summary judgment will be granted on this basis as well.

---

[3] Williams did not experience a skin rash until a few days after the incident. (Williams Dep. 14:23-24).

### D. Qualified Immunity

Even if Williams had stated a colorable constitutional claim, the Defendants are nevertheless entitled to qualified immunity from this claim for damages. In order to establish a civil rights claim, Williams must show the deprivation of a right secured by the United States Constitution or the laws of the United States. However, government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that

should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). As stated, the Court finds that Williams failed to establish the violation of a constitutional right. Defendants simply could not have recognized that shaking out rugs as part of janitorial duties would violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson*, 526 U.S. at 609. Therefore, Defendants are protected from liability by qualified immunity.

## IV.  Conclusion

The Court will grant Defendants' motion (Doc. 16) and enter judgment in their favor. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: February 16, 2021